UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER WAYNE NAZARIO,

     Plaintiff,

v.

UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY,

     Defendant.

Case No. 24-cv-2448-TC-TJJ

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant University of Kansas Hospital Authority's ("UKHA") Motion for Protective Order Regarding Deposition Topics Attached to Plaintiff's Second Amended Notice of Corporate Representative Deposition of the University of Kansas Hospital Authority (ECF No. 50) ("Motion"). Defendant requests a protective order under Fed. R. Civ. P. 26(c) prohibiting Plaintiff from deposing its Rule 30(b)(6) corporate representative on Topics 1(a), 1(c), 1(d), 1(f), 1(h), 1(i), 2(b), 2(c), 2(d), 2(e), 3(b), 3(d), 3(g), 3(o), 3(p), 3(r), 3(s), 3(t), 3(v), 7(b), 7(c), 7(d), 7(e) 7(g), 9(a), 9(b), 11(a)–(e), 12(a), 12(b), 12(c), 12(d),13(a)(v)–(x), 13(a)(xiii), 13(b)(i)–(ix), and 13(b)(x)(i). Plaintiff filed his opposition to the motion (ECF 53) and Defendant filed its reply (ECF No. 54). As explained below, the motion is granted in part and denied in part.

## I.     Background

Plaintiff filed this employment discrimination action on September 30, 2024. Plaintiff was employed by Defendant from October 15, 2001 to October 25, 2023 as a licensed psychiatric registered nurse in the emergency room at the UKHA, with the Psychiatric Liaison Service Department. Plaintiff was a union member with the Kansas University Nurses Association. The

primary functions and duties of his employment were evaluating, assessing, and treating psychiatric patients presenting through the Emergency Room at KU Medical Center. Between October of 2001 and January of 2022, Plaintiff was employed solely as a registered nurse in the Psychiatric Liaison Service Department. Plaintiff does not allege any substantive changes affecting Plaintiff's terms of employment were made prior to Defendant's restructuring in January 2022. In January 2022, Plaintiff was informed that Defendant was making significant and substantive changes to the Psychiatric Liaison Service Department. Defendant informed Plaintiff and all other nurses in the Department they were being terminated from their positions at UKHA and as part of the emergency department. Plaintiff and the other nurses were also told they would be considered for employment with Defendant in its Strawberry Hill Adultpsych Department, at a different rate of pay, in a position that was non-union.

In February 2022, Plaintiff was hired for a position at the Strawberry Hill Adultpsych Department and underwent five-weeks of training. Plaintiff alleges this training, and Defendant's restructuring in general, was not to train nurses, but to replace older union nurses in the Psychiatric Liaison Services Department with inexperienced younger females and young social workers who were not union members. Plaintiff believed the restructuring affected patient care and safety, raised potential liability concerns, and threatened employee safety. Plaintiff reported his concerns to his supervisors.

In November 2022, Plaintiff alleges he was falsely accused of unprofessional conduct and violation of hospital policies, and Defendant did not follow or comply with its own policies when imposing discipline on Plaintiff. In October 2023, an anonymous complaint was lodged against Plaintiff by a patient, and Plaintiff was placed on leave and under investigation. Plaintiff was terminated on October 25, 2023. Plaintiff alleges his termination was pretextual, retaliatory,

unlawful, a direct result of sex and age discrimination, and in retaliation for making protected reports and complaints and expressing his safety, security, and quality of care concerns.

On August 4, 2025, Plaintiff issued his initial Notice of 30(b)(6) Deposition, and a Second Amended Notice on November 19, 2025. Plaintiff's Second Amended Notice contains 15 topics and 127 subtopics. After multiple conferences with the Court, Defendant filed its Motion for Protective Order objecting to Plaintiff's proposed topics on the bases certain topics (1) lack temporal limitations, (2) are overbroad and vague, and seek information that is not relevant and proportional to the needs of the case, and/or (3) improperly call for legal conclusions or opinions. Defendant argues due to the objectionable issues it would be unduly burdensome to prepare a corporate representative to testify on its behalf on the disputed topics. The Court addresses these issues below.

## II.    Legal Standards

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose a corporate party by noticing the deposition of the corporation's representative as to certain designated topics. Pursuant to that Rule, the notice must "describe with reasonable particularity the matters for examination."[1] The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf.[2] The person(s) designated must testify about information known or reasonably available to the corporate party.[3]

A party served with a Rule 30(b)(6) notice may move for a protective order under Fed. R.

---

[1] Fed. R. Civ. P. 30(b)(6).

[2] *Id.*

[3] *Id*.

Civ. P. 26(c), including one "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."[4]  The Court may enter a protective order to protect a party from undue burden.[5]  "Determining whether the topics or definition in a Rule 30(b)(6) deposition notice imposes an undue burden is a case-specific inquiry that requires consideration of factors such as relevance, proportionality, and the breadth of the topic or definition at issue."[6] The party seeking a protective order bears the burden of showing good cause for the protection sought, and Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.[7]  The Court's broad discretion can be utilized to "specifically define and/or narrow the disclosure or discovery, including the terms, timing, and method of discovery."[8]

Topics or areas of inquiry in a Rule 30(b)(6) notice are constrained by the general scope and limits of discovery set out in Fed. R. Civ. P. 26(b).[9]  Under that Rule, the scope of discovery is generally limited to "any nonprivileged matter that is relevant to any party's claim or defense

---

[4] Fed. R. Civ. P. 26(c)(1)(D). *See also Orchestrate HR, Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, No. 19-4007-DDC, 2023 WL 2269780, at *2 (D. Kan. Feb. 28, 2023) ("A party noticed under Fed. R. Civ. P. 30(b)(6) cannot avoid its obligation to produce a witness on a topic designated in the notice of deposition by objecting to it. Instead, when the responding party claims the notice improperly designates topics for testimony, requesting a protective order represents a proper method of response.").

[5] Fed. R. Civ. P. 26(c).

[6] *Chadwell v. United States*, No. 20-1372-JWB-BGS, 2024 WL 1834560, at *5 (D. Kan. Apr. 26, 2024).

[7] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[8] *Orchestrate,* 2023 WL 2269780, at *1.

[9] *Arenas v. Unified Sch. Dist. No. 223*, No. 15-CV-9359-JWL-TJJ, 2016 WL 6071802, at *4 (D. Kan. Oct. 17, 2016).

and proportional to the needs of the case."[10]

## III.    Disputed Rule 30(b)(6) Topics and Issues

### a.    Topics 1(a), 1(h), 1(i), 2(b), 2(c), 2(d), 2(e), 3(b), 3(d), 3(o), 3(r), 3(s), 3(t), 7(d), 7(e), 9(b), 11(a)–(e), 13(a)(v), 13(a)(x): Topics Not Limited in Time

Defendant objects to Topics 1(a), 1(h), 1(i), 2(b), 2(c), 2(d), 2(e), 3(b), 3(d), 3(o), 3(r), 3(s), 3(t), 7(d), 7(e), 9(b), 11(a)–(e), 13(a)(v), 13(a)(x) because they contain no temporal limitation. Plaintiff argues he was employed by Defendant for 22-years, and the relevant time frame may be dependent on the context of the question.  Plaintiff, however, agreed to limit some topics to a timeframe beginning in July 2021,[11] but only if Defendant would stipulate it had no issues with Plaintiff's performance prior to July 2021.  Without the stipulation, Plaintiff believes he must address the tenure of Plaintiff's entire 22-year long career with Defendant to demonstrate the disciplinary action Plaintiff faced in 2022 and 2023 was retaliatory.

"In the context of employment discrimination cases, courts have held that discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence; thus, courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period."[12]  The task of the Court is to balance the relevance of the information against the burden on the defendant.[13]  As noted above, Plaintiff's employment with Defendant began on October 15, 2001.  Plaintiff alleges he was informed of the substantive changes to the Psychiatric Liaison Service Department in

---

[10] Fed. R. Civ. P. 26(b)(1).

[11] Plaintiff states his claims in this case are "based generally on events that started in July 2021." Pl.'s Suggestions in Opposition to Def.'s Mot. for Protective Order, ECF No. 53, p. 1.

[12] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D. Kan. 2002).

[13] *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004).

January 2022, and faced discipline in November 2022 and October 2023, before his termination later in October 2023. Between October 2001 and January 2022, Plaintiff was employed solely as a registered nurse in the Psychiatric Liaison Service Department. Plaintiff does not allege any substantive changes were made to Plaintiff's employment prior to Defendant's restructuring in January 2022.

The Court has reviewed 1(a), 1(h), 1(i), 2(b), 2(c), 2(d), 2(e), 3(b), 3(d), 3(o), 3(r), 3(s), 3(t), 7(d), 7(e), 9(b), 11(a)–(e), 13(a)(v), 13(a)(x), and finds a temporal limitation beginning July 1, 2021 and ending October 25, 2023 is reasonable and consistent with the cases in this District discussing temporal limits on discovery in employment discrimination matters.[14] The time period includes a period prior to the initial changes regarding restructuring being made, and is over a year prior to the first instance of Plaintiff being disciplined. The time period also includes time Plaintiff spent employed in the Psychiatric Liaison Service and Emergency Department and his period of training and employment in the Strawberry Hill Adultpsych Department prior to his termination. And, as the parties' agree, prior to this period there was little distinction between the roles in the Psychiatric Liaison Service and Emergency Department and Strawberry Hill Adultpsych Department "other than what would be governed by their licensure."[15]

Plaintiff suggests, for example, the time before Defendant's restructuring prior to July 2021 is relevant to Defendant's reasons for the restructuring, the financial implications, and motives for the restructuring. However, the Court finds Plaintiff's arguments regarding why information from

---

[14] *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 n.16 (D. Kan. 2008)

[15] Second Am. Notice of Deposition, ECF No. 53-1, p. 3.

all of Plaintiff's 22-year employment with Defendant is relevant to be unpersuasive.[16]  Defendant

should not have to agree to Plaintiff's proposed stipulation to achieve the requisite particularity or

proportionality.[17]  Moreover, the Court finds Plaintiff's request for this discovery over Plaintiff's

entire 22-year employment with Defendant would be unduly burdensome and disproportionate to

the needs of the case.  A much briefer period of time, such as July 2021 through October 25,

2023,[18] as the parties have agreed in some instances, will allow Plaintiff to explore Defendant's

reasons and motives for restructuring.  This is especially true considering Plaintiff's employment

file has already been produced, Plaintiff himself has already been deposed, and the parties agreed

to the July 1, 2021 to October 25, 2023 temporal limit on several topics to which no objection was

lodged.

---

[16] Indeed, Plaintiff essentially asks the Court to allow discovery for this extended 22-year period by default.  Plaintiff repeatedly argues various discovery requests are relevant for periods prior to July 2021 without offering any particular time period less than the 22-years Plaintiff was employed by Defendant.

[17] Plaintiff contends the stipulation is appropriate because Defendant's deposition of Plainitff indicates Defendant intends to argue Plaintiff's performance long before July 2021 was problematic.  *See* Pl.'s Suggestions in Opposition to Def.'s Mot. for Protective Order, ECF No. 53, p. 1; ECF No. 53-10.  The referenced deposition shows Plaintiff testified that prior to an October 2023 incident he has not received criticism for being combative or rude with patients.  Defense counsel then produced and asked about a document from 2006 accusing Plaintiff of being combative with a patient.  Plaintiff claimed he did not remember the incident and had never seen the document.  Plaintiff claims this line of questioning during Plaintiff's deposition shows Defendant intends to put Plaintiff's entire employment history at issue and entitles Plaintiff to inquire into Plaintiff's 22-year employment history with Defendant.

The Court does not find Plaintiff's argument persuasive.  Besides the limited excerpt from the deposition, Plaintiff provides no other argument to support this contention, or any other instances of Defendant "placing Plaintiff's entire employment history at issue."  The isolated production of and questions regarding a document from a 2006 incident Plaintiff does not even remember does not justify allowing Plaintiff to question Defendant's corporate representative as to Plaintiff's entire 22-year employment history with Defendant, or the massive burden that would be placed upon Defendant to prepare a witness to provide such testimony.

[18] Plaintiff has not offered or suggested any alternative temporal scope limitations for a more extended period of time than July 2021 through October 25, 2023 but less than Plaintiff's 22-years of employment with Defendant.

The Court finds a temporal scope of July 1, 2021 to October 25, 2023 is appropriate for all topics for which a temporal scope is applicable and at issue, namely Topics 1(a), 1(h), 1(i), 2(b), 2(c), 2(d), 2(e), 3(b), 3(d), 3(o), 3(r), 3(s), 3(t), 9(b), 11(a)–(e), 13(a)(v), 13(a)(x). And the Court will not require any stipulation by Defendant that it had no issues with Plaintiff's performance prior to July 2021. As to temporal scope, Defendant's motion for protective order is granted.

### b. Topics 1(c), 1(d), 2(b), 3(g), 3(s), 3(v), 13(a)(vi)–(ix), and 13(b)(i)–(ix): Topics About Non-Parties

Topics 1(c), 1(d), 2(b), 3(g), 3(s), and 3(v) seek personal information about non-parties, including their age and sex, qualifications, licenses, certifications, seniority, scheduling preferences, and communications. Defendant argues these employment details are irrelevant to the claims in this action and overbroad. Plaintiff claims such topics are relevant and seek comparator evidence concerning other employees of Defendant. At the outset, the Court notes that in his response to the Motion, Plaintiff repeatedly argues topics are relevant, without discussing whether they are, as written, overbroad, and fails to fully respond to Defendant's objections. While some topics may arguably be relevant, Plaintiff is still required to narrow and designate the topics with "painstaking specificity."[19] Relevancy is not the Court's only consideration.

Topics 1(c) and (d) seek to inquire about the qualifications, licenses, and certifications (including any specialized experience or training) of any individual(s) who performed any work duties in the Psychiatric Liaison Service as a Behavioral Health and Psychiatric RN, Social Worker, or Case Manager, that were formerly performed by Clinical Nurse IIs. Plaintiff also seeks to inquire regarding these things with respect to any individual(s) who now perform some or all of Plaintiff's job duties and responsibilities. Plaintiff states he "wants to discover all people

---

[19] *McBride*, 250 F.R.D. at 584.

(regardless of job title or classification) who did what Plaintiff did for the last five years." Defendant objects to these topics on the basis they are overbroad and seek irrelevant information.

The Court agrees these topics are overly broad, encompassing a broad range of employees—RNs, social workers, and case managers—and Plaintiff's explanation that he wants to identify individuals "who did what Plaintiff did for the last five years" is much too vague. Requiring Defendant to search the personnel files of all employees who may have performed some or all tasks formerly performed by Clinical Nurse IIs or Plaintiff, regardless of their job title or classification, would be unduly burdensome and disproportionate to the needs of this case. The Court therefore grants Defendant's Motion for Protective Order as to topics 1(c) and 1(d).

Topic 2(b) seeks information regarding any employees who were disciplined or terminated for violating the "same policies" that Plaintiff allegedly violated. Defendant objects to the topic on the basis it is overbroad, there is no time limit on the topic, and because Plaintiff was disciplined for "unacceptable and unprofessional conduct," whereas violations of policies could encompass many other different scenarios. Defendant instead proposes the topic be limited to others who were terminated or disciplined for depriving a patient of food and threatening to inject a patient after the patient rejected medication. Plaintiff argues the topic is relevant to determine whether similar incidents gave rise to similar or disproportionate discipline of Plaintiff.

First, the Court agrees a temporal limit is necessary, and will apply the same July 1, 2021 to October 25, 2023 timeframe as discussed above. The Court finds this is a sufficient timeframe for gleaning information relevant to the topic, and it would be unduly burdensome and disproportionate to the needs of this case to allow discovery on this topic for Plaintiff's entire 22-year employment with Defendant. Second, the Court finds the topic, as written, is overly broad. As Plaintiff states in his response, he is looking for similar incidents that gave rise to similar or

disproportionate discipline. The topic, however, as written, seeks information generally regarding those who violated the same policies (a vague term) as Plaintiff, and is not actually limited to similar incidents. The Court therefore grants Defendant's Motion for Protective Order as to Topic 2(b) insofar as it shall be limited temporally, and the Court will further limit the scope of this Topic to others terminated or disciplined for restricting or depriving a patient of food or improperly handling a patient who refused medication. Defendant shall produce a corporate representative to answer questions regarding Topic 2(b) as limited here.

Topic 3 concerns Defendant's restructuring of the Psychiatric Liaison Service and Emergency Department and changes to Plaintiff's employment as part of Defendant's "plan for the future." Topics 3(g), (v), and (s) are in dispute. They seek information regarding non-parties, and Defendant objects on various bases, including relevance and overbreadth. Topic 3(g) seeks information regarding specific changes to the job titles, pay, contracts, seniority, scheduling preferences, and union membership status of Plaintiff and other nurses in the Psychiatric Liason Service from July 2021 through October 25, 2023. Defendant objects on the basis that it would be required to research each unidentified individual's seniority and scheduling preferences, and such information is irrelevant. Plaintiff argues such topics are generally relevant to look at changes in Plaintiff's pay, contracts, and union membership when his position changed. Plaintiff, however, fails to directly address Defendant's objection to the inclusion of seniority and scheduling preferences in the topic. Therefore, the Court grants Defendant's motion for protective order insofar as it pertains to the inclusion of issues of seniority and scheduling preferences in Topic 3(g). Defendant must produce a corporate representative to answer questions regarding the rest of Topic 3(g).

Similarly, Topic 3(v) asks for the "names, ages, and sex of all nurses who worked in the Psychiatric Liaison Service and Emergency Department for the past 5 years."  Defendant objects on the basis of overbreadth, and the Court agrees.  Plaintiff claims such topic seeks comparator evidence.  However, "all nurses who worked in the Psychiatric Liaison Service and Emergency Department" are not necessarily similarly situated comparators.[20]  As Defendant points out, for example, nurses in the "Emergency Department" are not under the same standards and supervision as a Behavioral Health Psych Nurse.  Therefore, the Court grants Defendant's motion for protective order as it pertains to Topic 3(v).

Topic 3(s) seeks testimony about any communication from July 1, 2021 through December 31, 2023 relating to staffing and labor, costs or savings for the elimination of the Clinical Nurse II position and change to a model that employs Behavioral Health and Psychiatric RNs, social workers, and/or case managers, including the meeting minutes for any board meeting, committee meeting, or task force.  Defendant objects to this topic as the inclusion of "any communication" relating to "costs or savings" would require an extensive search of email communications and records.  Further, Defendant argues, the information sought is not described with reasonable particularity.  Plaintiff argues the topic is relevant to Defendant's financial motivations for restructuring due to staffing changes.  Plaintiff fails to address whether the request is overly broad.

The Court agrees requiring Defendant to search for and prepare a witness to testify on "any communications" related to staffing, labor, costs, or savings for the elimination of the Clinical Nurse II position and change to a model that employs Behavioral Health and Psychiatric RNs and

---

[20] See Boliere v. Robert Brodgen's Olathe Buick-GMC Inc., 706 F. Supp. 3d 1275, 1293 (D. Kan. 2023) ("To be similarly situated, the comparators must have dealt with the same supervisor and . . . been subject to the same standards governing performance evaluation and discipline.").

social workers and/or case managers would be unduly burdensome and disproportionate to the needs of this case. To actually limit the request to information regarding Defendant's financial motivation for restructuring, the Court limits the topic to communications regarding potential or anticipated savings from the elimination of the Clinical Nurse II position. Therefore, subject to the above limitation, Defendant's Motion for Protective Order is granted as to Topic 3(s), and Defendant shall produce a corporate representative to testify on this topic as limited here.

Topics 13(a)(vi)–(ix) inquire about personal information, training, the personnel file and reason for separation of a security guard who allegedly made a complaint against Plaintiff that led to his final written warning. Defendant objects to the topics on the basis the requested information is confidential, not relevant to Plaintiff's claims, and was properly objected to during the course of written discovery. Plaintiff clarifies he does not seek identifying information but seeks information to demonstrate Plaintiff's discipline resulting from the incident was disproportionate and pretextual. The Court therefore finds Plaintiff waived his request as to identifying information contained in Topic 13(a)(vi). The remaining subtopics, including the personnel file, training and instruction given to the security guard, and reason for the security guard's separation from Defendant do not appear to the Court to be relevant to the issue of whether Plaintiff's discipline resulting from the security guard's complaint was disproportionate or pretextual. The Court therefore grants Defendant's Motion for Protective Order as to Topics 13(a)(vi)–(ix).

Topic 13(b)(i)–(ix) seeks details regarding an anonymous complaint made against Plaintiff by a patient, including details of the complaint, any prior incidents involving the patient, the patient's medical reports, any complaints about the patient by staff, any complaints made by the patient against any other staff members, and the investigation conducted by Defendant into this patient incident. Defendant objects to the topics on the basis the topics seek to obtain HIPAA-

protected patient information which would require the informed consent of the patient before disclosure and otherwise violate the patient's privacy.  Defendant also objects on the basis the topics are overbroad, not limited in scope to a specific time frame, and seek irrelevant and non-proportional information.  Defendant also states it agrees to produce a witness to testify regarding whether the patient has previously been admitted, and whether the patient had made any complaints during those previous admissions.  Plaintiff again argues the topic is relevant to demonstrate the factual basis for Plaintiff's termination was retaliatory, false, and pretextual.

The Court will grant Defendant's Motion for Protective Order insofar as the Topic 13(b)(i)–(ix) subtopics encompass HIPPA-protected information, such as the complaining patient's medical reports.  However, much of the requested information does appear relevant and can be provided without violating HIPPA.  The complaining patient is anonymous.  The Court therefore orders Defendant to produce a witness to testify regarding whether the patient has previously been admitted, whether the complaining patient had made any complaints during those previous admissions, the nature of the complaining patient's complaints regarding Plaintiff, and Defendant's investigation of the complaint.

### c. Topics 1(f), 3(p), 7(b), 7(c), 7(g), 11(e), 12(a), 12(c), 12(d), and 13(b)(xi): Topics with Vague Language

Defendant objects to Topics 1(f), 3(p), 7(b), 7(c), 7(g), 11(e), 12(a), 12(c), 12(d), and 13(b)(xi) for containing vague language.  Defendant contends language contained in the topics does not provide enough clarity to prepare a corporate representative to testify on its behalf.  Including language in a Rule 30(b)(6) notice that is vague or overly broad may subject the noticed party to an impossible task.[21]  "If the defendant cannot identify the outer limits of the areas of

---

[21] *See McBride*, 250 F.R.D. at 584.

inquiry noticed, compliant designation is not feasible."[22]  To allow Rule 30(b)(6) to function, the requesting party must provide "with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute."[23]

Defendant objects to language contained in Topic 1(f) regarding Defendant's "best efforts" to provide Plaintiff with information and education needed to comply with applicable law. Defendant argues the concept of "best efforts" is subjective.  However, Plaintiff argues the phrase "best efforts" is the exact phrase contained in Defendant's Code of Ethics and Professional Conduct.  Defendant's Code of Ethics and Professional Conduct states Defendant will "use its best efforts to provide [employees] with the information and education [they] need to comply with applicable laws."[24]  The Court therefore denies Defendant's request for protective order as to Topic 1(f), and requires it produce a corporate representative to testify on this Topic as to its "best efforts" within the meaning of its own Code of Ethics and Professional Conduct.

Defendant objects to the inclusion of the terms "others," including "other employees," "other physicians," and/or "any employees or physicians" contained in topics 3(p), 7(b), 7(c), 7(g), 11(e), 12(a), 12(c), and 12(d).  Plaintiff argues the questions seek to ask Defendant to identify any person who can corroborate Plaintiff's concerns that are unknown to Plaintiff but known to Defendant.

Topic 3(p) seeks information regarding concerns raised by Dr. Wilcher, Dr. Cannon, Dr. Thom, and "other physicians" regarding Defendant's restructuring.   Topic 7(g) also seeks communications and letters received from Dr. Wilcher, Dr. Cannon, Dr. Bernath "and other

---

[22] *Id.*

[23] *Id.*

[24] Pl.'s Suggestions in Opposition to Def.'s Mot. for Protective Order, ECF No. 53, Ex. 53-3, p. 2.

physicians" regarding Defendant's restructuring and changes.  The Court does not find, in the context of the Topics, the phrase "other physicians" to be vague, as it clearly refers to any other physician besides those listed that raised concerns or sent communications regarding Defendant's restructuring.  Defendant's Motion is denied as to Topic 3(p) and 7(g).  Defendant must produce a witness to testify regarding these Topics.

Topic 7(b) and 7(c) seek information regarding any concerns raised by any employees, physicians, or internal investigations regarding the change in work duties formerly performed by Clinical Nurse IIs and the use of social workers to perform the work previously performed by Clinical Nurse IIs as a result of Defendant's restructuring.  Topic 7(c) also inquires into concerns raised in Ethic Hotline Report #2022-388.  The Court finds, in the context of the Topics, the phrases "any employees or physicians" is clearly defined as those who raised concerns regarding Defendant's restructuring of the Clinical Nurse II role and the use of social workers for tasks formerly performed by those employed as Clinical Nurse II.  Defendant's Motion is denied as to Topics 7(b) and 7(c).  Defendant must produce a witness to testify regarding these Topics.

Topic 11(e) again seeks any complaints from "any other employees or physicians" about concerns raised by Plaintiff and those contained in Topics 11(a)–(d).  Standing alone, Topic 11(e) does appear vague.  However, in the context of Topic 11(a)–(d), the phrase "any other employees or physicians" is limited to those who made the same complaints or raised the same concerns as Plaintiff as identified in Topics 11(a)–(d).  Therefore, Defendant's Motion is denied as to Topic 11(e).  Defendant must produce a witness to testify regarding this Topic.

Topics 12(a), 12(c), and 12(d) concern Defendant's response to concerns raised about restructuring.  Topic 12(a) asks for information regarding whether Defendant created any committees, taskforces, or reports, or took other action in response to issues raised by "Plaintiff

and/or others."  The Court does not find the phrase "others" to be vague in the context of the question, and clearly refers to those who are not Plaintiff and raised the same concerns about restructuring.  The same is true in reference to the inclusion of "any physician" in Topic 12(c). Topic 12(c) seeks information about the involvement of "any physician" in the investigation or reporting on changes to the Psychiatric Liaison Service and Emergency Department due to the concerns and complaints of Plaintiff regarding Defendant's restructuring.  Any physician is clearly limited to those physicians who were involved in the investigation or reporting on changes to the Psychiatric Liaison Service and Emergency Department.  Defendant's Motion is denied as to Topics 12(a) and 12(c).  Defendant must produce a witness to testify regarding these Topics.

Defendant also objects to similar vague language in Topic 12(d).  However, Topic 12(d) seeks information regarding the details of any investigation or policy/procedure changes resulting from any reports concerning patient care and safety issues.  There does not appear to be any objectionable language such as "others," "other employees," "other physicians," and/or "any employees or physicians" contained in Topic 12(d), and Defendant's Motion is therefore denied as to Topic 12(d).

Topic 13(b)(x)(i) seeks testimony regarding "[a]ny instances of the same or similar behavior by any person employed in the Psychiatric Liaison Service resulting in any discipline." Defendant objects on the basis the phrase "same or similar behavior" is vague, and Plaintiff fails to define or describe what behavior Plaintiff considers "similar" to his own.  Plaintiff again states that the topic is relevant to determine whether Plaintiff received disproportionate discipline.  This topic, objections, and arguments are similar to those lodged to Topic 2(b).  Therefore, the Court orders the same and limits Topic 13(b)(x)(i) to others terminated or disciplined for restricting or depriving a patient of food or improperly handling a patient who refused medication.

16

### d.  Topics 9(a), 12(b), 13(a)(xiii): Topics Seeking Legal Conclusions

Defendant objects to topics 9(a), 12(b), and 13(a)(xiii) as seeking legal conclusions.  Topics 9(a) and 12(b) generally seek a corporate deponent on Defendant's obligations under state and federal law regarding Plaintiff's job duties, professional licensure, and reporting concerning patient care and safety issues.  In addition, Topic 12(b) seeks information regarding Defendant's obligation under hospital policies.  Topic 13(a)(xiii) asks whether Defendant concluded Plaintiff violated any statute, regulation, rule, duty, or practice when disciplining Plaintiff.  Defendant argues such topics require a corporate representative, a lay witness, to interpret laws and provide legal opinion.  Plaintiff cites *Pflughoeft v. Kansas & Oklahoma R.R., LLC*,[25] to argue there is nothing inherently improper about questioning an adverse party regarding its legal claims and contentions.

In *Pflughoeft*, the court noted there is a split of authority whether parties are allowed to use a Rule 30(b)(6) deposition to inquire about legal claims and defenses.[26]  After a thorough analysis of the relevant Federal Rules and caselaw, the court found that a "party may use a Rule 30(b)(6) deposition to ask a corporate representative about the facts underlying a corporate party's legal claims or defenses, subject to the same limitations as all other discovery."[27]  The *Pflughoeft* court did note a distinction whether the Rule 30(b)(6) lay witness was testifying about a party's *factual* versus *legal* contentions.[28]

---

[25] 22-1177-TC-RES, 2023 WL 5672202 (D. Kan. Sept. 1, 2023).

[26] *Id.* at *7.

[27] *Id.* at *8.

[28] *See id.* at *10 ("While courts have found that a lay witness may testify about the facts underlying a legal conclusion, it may be improper to directly question a lay witness regarding a party's legal contentions.")

The Court agrees with Defendant that topics 9(a) and 12(b) seek legal conclusions, except to the extent Topic 12(b) is related to hospital policies, in that they ask a lay witness to opine on its legal obligations.[29]  Topic 13(a)(xiii) similarly asks Defendant to determine whether the basis for Plaintiff's discipline or termination was his alleged violation of any statute, regulation, rule, duty, or practice.  Again, the Court finds the determination as to whether Plaintiff violated a statute or legal duty improperly seeks legal conclusions.  However, the Court will permit the inquiry insofar as Plaintiff seeks information regarding any alleged violation of hospital policy or practice—as opposed to a legal requirement, statute, regulation, or legal duty—as the factual basis and grounds for Plaintiff's discipline and termination.[30]  Therefore, the Court grants Defendant's Motion for Protective Order as it pertains to Topics 9(a), 12(b), and  Topic 13(a)(xii), except to the extent the topics inquire about alleged violations of Defendant's own policies and practices.

## IV.    Third Amended Scheduling Order[31]

The Court held a pre-motion conference in this matter on November 20, 2025.  At that conference the Court held all of the parties' unexpired Scheduling Order deadlines in abeyance pending ruling on the instant Motion for Protective Order.[32]  The motion was not fully briefed until

---

[29] *See S.E.C. v. Kovzan*, No. 11-2017-JWL, 2013 WL 653611, at *3 (D. Kan. Feb. 21, 2013) (finding topics concerning the interpretation and meaning of certain regulatory terms and guidance could conceivably call for legal conclusions).

[30] *See id.* (denying request for protective order seeking to preclude 30(b)(6) deposition that included topics concerning "the factual basis for [plaintiff's] contentions and theories in this case . . ."); *Pflughoeft*, 2023 WL 5672202, at *10 (allowing plaintiff to ask questions regarding facts underlying party's claim plaintiff acted negligently by undertaking tasks that were outside of his job responsibility).

[31] Although not labeled as the "Fourth" amended scheduling order, this is actually the fourth time the Court has amended the parties' Scheduling Order deadlines.  *See* ECF Nos. 24, 35, and 45 (all amending Scheduling Order deadlines).

[32] *See* Minute Entry and Order, ECF No. 49.

January 9, 2026. Now that Defendant's Motion has been resolved with the rulings in this order, the Court enters the following Third Amended Scheduling Order:

| 24-cv-2448-TC-TJJ<br>THIRD AMENDED SCHEDULING ORDER<br>SUMMARY OF DEADLINES AND SETTINGS | |
| --- | --- |
| Event | Deadline/Setting |
| Defendant to produce its Rule 30(b)(6) witness(es) for deposition | **March 13, 2026** |
| All discovery completed | **May 1, 2026** |
| Proposed pretrial order due | **May 11, 2026** |
| Pretrial conference by telephone | **May 19, 2026, at 10:00 AM** |
| Potentially dispositive motions (e.g., summary judgment) | **June 15, 2026** |
| Motions challenging admissibility of expert testimony | **June 15, 2026** |
| Trial in KCK, ETT 5 days | **March 2, 2027** |

A brief explanation regarding the schedule set here. This case was filed September 30, 2024. Plaintiff did not serve its Fed. R. Civ. P. 30(b)(6) Notice of Deposition on Defendant until August 4, 2025, with a deposition date of August 25, 2025.[33] At the time, the discovery deadline was October 10, 2025. On September 15, 2025, Plaintiff filed a Motion to Amend the Scheduling Order for a third time.[34] In the motion, Plaintiff discussed Defendant's objections and the parties' ongoing disagreements over the noticed Rule 30(b)(6) deposition, and requested, among other things, an approximate 60-day extension of the deadline to complete all discovery, to December

---

[33] Notice of Deposition of University of Kansas Hospital Authority, ECF No. 37.

[34] Mot. to Amend Scheduling Order and Set New Expert Witness Disclosure Deadlines, ECF No. 41.

15, 2025. The Court ultimately did extend the discovery deadline to December 12, 2025.[35] Apparently, at the time of filing the Motion to Amend the Scheduling Order, Plaintiff felt 60 days would be sufficient time for him to resolve the disputes, confirm scheduling, take Defendant's Rule 30(b)(6) deposition and complete all discovery. Accordingly, the Court grants a bit more than 60 days for Plaintiff to take the deposition and complete all discovery in this Third Amended Scheduling Order, which should be ample. Given the lengthy extensions already granted and the circumstances in this case, the Court is not willing to grant any further extension absent filing of a motion and a showing of good cause.

To the extent this Third Amended Scheduling Order is inconsistent with the prior scheduling orders, this Third Amended Scheduling Order supersedes the earlier ones. To the extent this Third Amended Scheduling Order does not address dates, deadlines, or requirements remain in effect. The parties are advised to review, in particular, the various requirements governing discovery, motions, submission of the pretrial order, and the pretrial conference in the Scheduling Order. Those requirements—other than the dates that are changed, as identified herein—remain in place.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective Order Regarding Deposition Topics Attached to Plaintiff's Second Amended Notice of Corporate Representative Deposition of the University of Kansas Hospital Authority is GRANTED IN PART and DENIED IN PART, as more fully set forth above.

**IT IS FURTHER ORDERED** the Court enters the above Third Amended Scheduling Order, and the deadlines set forth therein will not be extended absent the filing of a motion and a

---

[35] Memorandum & Order, ECF No. 45.

showing of good cause.

IT IS SO ORDERED.

Dated February 13, 2026, at Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge